THE STATE, EX REL. MORROW ET AL., APPELLEES, *v.* HILL ET AL., APPELLANTS.

[Cite as State, ex rel. Morrow, v. Hill (1977), 51 Ohio St. 2d 74.]

(No. 76-1229—Decided July 13, 1977.)

*Messrs. Logan & Davis, Mr. Paul B. Roderer, Mr. Lee C. Falke,* county prosecutor, and *Mr. William H. Wolff,* for appellees.

*Messrs. Goldman, Bogin & Fox* and *Mr. Asher Bogin,* for appellants.

LOCHER, J. The judgment of the Court of Appeals allowing the writ is affirmed.

The issue presented by respondents for our determination is whether the Court of Appeals erred in holding that the local church had submitted to the hierarchical structure of the national church. Specifically, respondents contend that, when attempting to discern whether the local church is part of a hierarchical structure or an independent congregation, the courts must look only to the legal documents of the local church.[2]

Two broad types of church polity are generally recognized by the courts: (1) hierarchical and (2) congregational.[3] A hierarchical polity exists when "the religious congregation * * * is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." A congregational polity, on the other hand, exists when "a religious * * * congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority." *Watson* v. *Jones* (1871), 13 Wall 679, 722, 723. Unfortunately, Mr. Justice Miller, writing for the court in *Watson* v. *Jones, supra*, offered no criteria for characterizing the polity as either hierarchical or congregational.

---

[2]*Serbian Orthodox Church* v. *Kelemen* (1970), 21 Ohio St. 2d 154, is cited in respondents' brief as precedent for looking only to the legal documents of the local church in resolving this dispute. Examining the Code of Regulations, Bylaws and recorded deeds of the local church, this court, in *Serbian Orthodox Church* v. *Kelemen, supra*, found the existence of title in the local church dispositive of the action. The issue of title is not determinative of the present issue. Moreover, neither party disputes that title is in the local church. Still unresolved would be the underlying and determinative issue of this case: which faction is rightly the local church? The court, in *Serbian Orthodox Church* v. *Kelemen, supra*, did not address this issue.

[3]Kauper, Church Autonomy and the First Amendment: The Presbyterian Church Case, The Supreme Court Review (1969), 347, 354.

The Court of Appeals based its finding of a relation-ship to the hierarchical structure not merely upon the written documents as urged by respondents but upon consideration of a variety of *indicia.* In particular, the court considered that each member of the congregation took a vow to adhere to the national Discipline; that the local church participated in national conferences by sending delegates; and that it provided officers in the national organization's government and generally followed prescribed national procedures in its day-to-day operations.

Other courts have similarly considered the broad spectrum of facts and circumstances in attempting to resolve analogous disputes. See annotation, 52 A. L. R. 3d 324. In reality, the Court of Appeals, *sub judice*, utilized a method designated as the "Living Relationship Test."[4] The Supreme Court of Pennsylvania, in *St. John Chrysostom Greek Catholic Church of Pittsburgh* v. *Elko* (1969), 436 Pa. 243, 259 A. 2d 419, certorari denied (1970), 399 U. S. 920, approved the application of the "Living Relationship Test" in determining that St. John's was not an independent church, but united hierarchically with Rome. The Pennsylvania Supreme Court thereby held that the lower court properly determined that the documents relating to the church's legal existence, including the charter, bylaws and deeds, were inconclusive as to the church's affiliation and therefore properly examined the rituals and practices of the church in determining its governmental nature. The Court of Appeals in this case concurred with the findings of the referee that the evidence of the local church being a member of the national church traverses a period of over 100 years, and involved generations of continuous and active participation in the affairs of the national body until the dispute arose, and preponderates other evidence implying autonomy. The propriety of looking to the lines of church authority as they existed before the dispute impaired them has been recognized as a means of directing

---

[4]Notes, Judicial Intervention in Disputes Over the Use of Church Property, 75 Harvard L. Rev. 1142, 1162-1164.

the court's attention to the prevailing understanding within the church before the schism.[5] A party having voluntarily assented to becoming a member of the local church thereby subjects himslf to the existing rules and procedures of said church and can not deny their existence.[6]

From *Watson* v. *Jones, supra,* to the present, the Supreme Court has not specified the appropriate measure of judicial inquiry for determining the polity of the church. However, the language of certain decisions appears to suggest the court's predilection. In *Kedroff* v. *St. Nicholas Cathedral* (1952), 344 U. S. 94, the court held that a New York statute purporting to transfer the possession of the cathedral to the American church violated the constitutional guarantee of religious freedom. An underlying question not decided by the court was who had the right to appoint the bishop, *i. e.,* was the American church part of the hierarchical Russian church. The court, however, did make the following comment, at page 120, concerning this issue:

"The record before us shows no schism over faith or doctrine between the Russian Church in America and the Russian Orthodox Church. It shows administrative control of the North American Diocese by the Supreme Church Authority of the Russian Orthodox Church, including the appointment of the ruling hierarch in North America from the foundation of the diocese until the Russian Revolution. We find nothing that indicates relinquishment of this power by the Russian Orthodox Church."

Further, in *Serbian Eastern Orthodox Diocese* v. *Milivojevich* (1976), 426 U. S. 696, although the hierarchical

---

[5] *Ibid.*

[6] *Watson* v. *Jones* (1871), 13 Wall 679, at page 729, reads, in relevant part:

"All who unite themselves to such a body [voluntary religious organization] do so with the implied consent to this government, and are bound to submit to it. But it would be a vain consent and would lead to total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed."

relationship was not in dispute, the court, at pages 715-716, in footnote 9, referred to the various *indicia* which it stated confirmed the nature of the hierarchical relationship, *i. e.*, the Diocese's subordinate nature was manifest in resolutions of the Diocese, by its submission of corporate bylaws, proposed constitutional amendments and final judgments of the Diocesan Ecclesiastical Court to the Holy Synod or Holy Assembly[7] for approval, and by the signing by the bishop of the Diocese of an oath of obedience to the Holy Assembly. The determination of the lines of church authority pre-existing the dispute by the Court of Appeals in the instant cause appears consonant with the methodology suggested by these two opinions.

Nor did the Court of Appeals disregard the interdiction of the First Amendment. *St. John Chrysostom Greek Catholic Church of Pittsburgh* v. *Elko, supra* (436 Pa. 243). The United States Supreme Court, in *Serbian Eastern Orthodox Diocese, supra,* in expressing its concern over the state becoming entangled in essentially religious controversies, cited the following interdiction espoused in *Presbyterian Church* v. *Hull Church* (1969), 393 U. S. 440, 449:

"* * * [T]he First Amendment severely circumscribes the role that civil courts may play in resolving church property disputes. * * * But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. * * * [T]he [First] Amendment therefore commands civil courts to decide church property disputes without resolving underlying controversies over religious doctrine. * * *"

The court, in *Serbian Eastern Orthodox Diocese, supra,*

---

[7] The Holy Synod and the Holy Assembly are the governing bodies of the Mother Church, Serbian Orthodox Church.

at page 710, went on to state that this principle applies with equal force to disputes over church polity and church administration.

In the present cause, the Court of Appeals attained its result by considering purely factual matters that related to the association of the local church with the national organization. The Court of Appeals did not resolve any controversies concerning religious doctrines, tenets or practices. The necessity of civil courts resolving this type of dispute is inherent in the nature of the dispute. There is no church judicatory recognized by both parties to which to remand this dispute. The basic issue of this dispute was a proper matter for determination by the Court of Appeals[6] and its utilization of the "Living Relationship Test" was an appropriate and constitutional means of resolving the dispute.

The referee failed to find the presence of a constitutional defense based upon equal protection or discrimination by race and the Court of Appeals concurred. The record reveals that respondents failed to support by evidence their contention that the action of the court would bind the local church to a racially segregated situation.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

W. Brown, P. Brown and Sweeney, JJ., concur.

P. Brown, J., concurring. For reasons of judicial

---

[6]Mr. Justice White, in a separate concurring opinion, in *Serbian Eastern Orthodox Diocese* v. *Milivojevich* (1976), 426 U. S. 696, stated, at page 725:

"Major predicates for the Court's opinion are that the Serbian Orthodox Church is a hierarchical church and the American and Canadian diocese, involved here, is a part of that church. These basic issues are for the court's ultimate decision * * *. I do not understand the Court's opinion to express otherwise and join the views expressed therein."

economy, I conclude that the question of the propriety of the remedy of *quo warranto* should not be reached.

O'NEILL, C. J., HERBERT and CELEBREZZE, JJ., would remand with instructions to dismiss the cause as being one not properly cognizable in *quo warranto*. See *State, ex rel. Cain, v. Kay* (1974), 38 Ohio St. 2d 15, 309 N. E. 2d 860.