OPINION *Page 2 
{¶ 1} Defendants-appellants St. Johns African Methodist Episcopal Church of Uhrichsville; St. Johns AME Church of Uhrichsville, Inc.; St. Johns Worship Praise Community Church, Inc.; Archie Jackson; Barbara Carter; George Caul; and Lori Jones-Jackson appeal the Judgment Entry of the Tuscarawas County Court of Common Pleas in favor of Plaintiff-appellee The African Methodist Episcopal Church, Inc. (hereinafter "AMEC").
 STATEMENT OF THE FACTS AND CASE {¶ 2} The African Methodist Episcopal Church has been in existence since 1816. It is governed by a publication known as the Doctrine andDiscipline of the African Methodist Episcopal Church. St. Johns African Methodist Episcopal Church of Uhrichsville, Ohio (St. Johns AME), was founded in the 1920's and affiliated itself with AMEC at that time. AMEC is organized and functions solely as a connectional church. A connectional church is one in which local churches are subject to the authority and control of the Mother Church as expressed in theDoctrine and Discipline, setting forth the scope of AMEC's authority and control over member churches and their congregations.
 {¶ 3} St. Johns AME did not have its own corporate by-laws, but conducted its affairs according to the rules and regulations set forth in the Doctrine and Discipline.
 {¶ 4} Relevant to the case sub judice, the Doctrine andDiscipline reads:
 {¶ 5} "GENERAL CHURCH PROPERTY
 {¶ 6} "A. Purchase, Transfer *Page 3 
 {¶ 7} "The African Methodist Episcopal Church, Inc. is organized and functions solely as a connectional church. The title(s) to all real, personal and mixed property held at the General, Annual Conference level or by the local churches, shall be held in TRUST for the African Methodist Episcopal Church, Inc. and subject to the provisions of theDoctrine and Discipline of the African Methodist Episcopal Church.
 {¶ 8} "However, the absence of an IN TRUST clause as indicated herein, in deeds, and documents of conveyances previously executed shall not exclude a local church from or relieve it of its connectional character and responsibilities to the African Methodist Episcopal Church, Inc., nor shall the lack of the IN TRUST phrase excuse or absolve a local congregation, church agency or Board of Trustees of its responsibilities and accountability to the African Methodist Episcopal Church, Inc., provided, the intent and desires of the founders and of the later congregations or Board of Trustees have all demonstrated the following conduct:
 {¶ 9} "1. Use of the name, customs, polity, or literature of the AME Church, Inc., in such a manner as to be known as a part of the AME Church connection;
 {¶ 10} "2. Conveyance of said property to the trustees of a local church or agency to the AME Church, Inc;
 {¶ 11} "3. The acceptance of the pastorate of ministers appointed by a bishop of an episcopal district or Annual Conference of the AME Church, Inc.;
 {¶ 12} "4. The payment of conference assessments or dues; and
 {¶ 13} "5. The participation and enrollment of the church as member of the connection of the AME Church, Inc., by said local church in the Quarterly Conference and the Annual Conferences." *Page 4 
 {¶ 14} From 1924 to 1992, members of St. Johns AME deeded the following real estate to the church:
 {¶ 15} 1. On June 20, 1924, the Meades deeded property to Martin McGill and others as Trustees of St. Johns and their successors in office forever.
 {¶ 16} 2. On July 20, 1939, the Meades deeded property to the Trustees of St. Johns, as those Trustees were then constituted and to their successors in office forever.
 {¶ 17} 3. On June 11, 1992, the Simpsons deeded property to St. Johns AME Church of Uhrichsville, Inc.
 {¶ 18} 4. In 1992, the Simpsons deeded another parcel of land to St. Johns AME, Inc.
 {¶ 19} In 2005, the congressional members of St. Johns AME, including Appellants Jackson, Carter and Caul, collectively decided to disassociate from AMEC and form a non-denominational church with Jackson as pastor. Appellant Jackson was ordained by a non-denominational organization known as Grapevine Ministries; thereby, forfeiting his membership in the AMEC as well as his ability to serve as trustee, pursuant to the provisions of the Doctrine and Discipline.
 {¶ 20} On August 21, 2005, the active members of St. Johns AME voted to withdraw from AMEC, and to form St. Johns Worship Praise Community Church, Inc. (hereinafter "Worship and Praise"). On August 30, 2005, St. Johns AME informed AMEC the withdrawal would be effective as of September 1, 2005. On June 6, 2006, AMEC formally notified St. Johns it was the owner of all St. Johns AME property.
 {¶ 21} The Doctrine and Discipline provides when a local church ceases to function as an AME church, the rights to all real property, personal property, and fixtures *Page 5 
are automatically transferred to the Annual Conference Trustees in which they are located.
 {¶ 22} On July 6, 2006, Jackson, Carter and Caul, as members of Worship and Praise, signed a resolution authorizing the transfer of St. Johns AME real property to Worship and Praise. On the same date, Appellants placed a mortgage on the real property on which the church was located, known as 1030 Cook Street, Uhrichsville, Ohio. Appellants Jackson, Carter and Jones-Jackson signed the mortgage on behalf of Worship and Praise. On July 7, 2006, they transferred the real property pursuant to a quit-claim deed to Worship and Praise. The mortgage was in the amount of $155,000 and was secured by the real and personal property located at 1030 Cook Street, Uhrichsville, Ohio. The members paid $117,341.51 of the mortgage proceeds to Chase Bank to extinguish a prior mortgage. They then placed $35,056.16 of the loan in a certificate of deposit to be used solely for the purchase of property adjoining the church, known as 1026 Cook Street. Appellants Jackson, Carter and Jones-Jackson signed an agreement providing any mortgage on the property at 1026 Cook Street would reference the $155,000 mortgage secured by 1030 Cook Street.
 {¶ 23} In June of 2007, Worship and Praise purchased 1026 Cook Street.
 {¶ 24} AMEC filed a complaint in this action seeking declaratory judgment and other relief against St. Johns African Methodist Church of Uhrichsville; St. Johns AME Church of Uhrichsville, Inc.; St. Johns Worship Praise Community Church, Inc.; Archie Jackson; Barbara Carter; George Caul; and Lori Jones-Jackson. Following a bench trial, the trial court granted judgment in favor of AMEC on all claims, but awarded *Page 6 
no monetary damages. Following the denial of Appellants' motion for reconsideration, Appellants now assign as error:
 {¶ 25} "I. THE COURT INCORRECTLY FOUND THAT AN EXPRESS TRUST EXISTED AND INCORRECTLY AWARDED PROPERTY TO THE PLAINTIFF.
 {¶ 26} "II. THE COURT INCORRECTLY FOUND THAT THE PROPERTY AT 1030 COOK STREET WAS INCLUDED IN THE TRUST AND INCORRECTLY AWARDED THE PROPERTY TO THE PLAINTIFF.
 {¶ 27} "III. THE COURT IMPROPERLY PERMITTED THE PLAINTIFF TO SUPPLEMENT ITS COMPLAINT ON THE DAY OF TRIAL DESPITE KNOWLEDGE OF THE PROPOSED PURCHASE OF THE PROPERTY MORE THAN FOUR (4) MONTHS IN ADVANCE.
 {¶ 28} "IV. THE COURT IMPROPERLY PERMITTED THE PLAINTIFF TO PRESENT A WITNESS AT TRIAL WHOM WAS IDENTIFIED LESS THAN TWO (2) WEEKS EARLIER.
 {¶ 29} "V. THE COURT INCORRECTLY FAILED TO DISMISS THE COMPLAINT FOR A VIOLATION OF CIVIL RULE 19, FAILURE TO JOIN A PARTY.
 {¶ 30} "VI. THE COURT INCORRECTLY AWARDED REAL PROPERTY TO A SEPARATE AND DISTINCT LEGAL ORGANIZATION WHICH WAS NOT A PARTY TO THE CASE.
 {¶ 31} "VII. THE COURT IMPROPERLY AWARDED THE PERSONAL PROPERTY TO PLAINTIFF WHEN THE PLAINTIFF DISMISSED THEIR CLAIM IN THEIR OPENING STATEMENT AND THE COURT DID NOT PERMIT QUESTIONS TO BE ASKED REGARDING PERSONAL PROPERTY. *Page 7 
 {¶ 32} "VIII. THE COURT INCORRECTLY PERMITTED PLAINTIFF'S COUNSEL TO QUESTION WITNESSES ON ISSUES NOT DISCUSSED IN DIRECT.
 {¶ 33} "IX. THE COURT IMPROPERLY DENIED THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.
 {¶ 34} "X. THE COURT IMPROPERLY DENIED THE DEFENDANT'S MOTION DIRECTED VERDICT."
 I. {¶ 35} In the first assignment of error, Appellants assert the necessary requirements of an express trust have not been proven by clear and convincing evidence. Specifically, Appellants maintain the only possible settlors of the trust could be the Meades or Simpsons, and there is no testimony either intended to dedicate property to the trust. Further, Appellants argue there has not been an actual conveyance of the property to the trust. Rather, the only conveyances were from the Meades and Simpsons to St. Johns AME. Finally, Appellants maintain St. Johns AME is the only possible trustee, and the actions of the members were sufficient to revoke the alleged trust.
 {¶ 36} A hierarchal or connectional church is one in which a local church is a subordinate member of a general church which has complete control over the entire membership of the general church. Tibbs. v.Kendrick (1994), 93 Ohio App.3d 35. An individual church is bound to follow the laws of the general church. Id.
 {¶ 37} In Jones v. Wolf (1979), 443 U.S. 595, the United States Supreme Court held: *Page 8 
 {¶ 38} "Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form."
 {¶ 39} Accordingly, Jones sanctions the use of an express trust in a church constitution as a means of securing the ownership of church property, but specified the trust would have to be "embodied in some legally cognizable form." Id.
 {¶ 40} In Ohio, "[e]xpress trusts arise by a manifested intent, either written or oral, to create a trust." Levens Corp. v. Aberth (Feb. 10, 1993), 9th Dist. No. 15661, at *6, citing Peterson v. Teodosio (1973),34 Ohio St.2d 161, 172. The elements of a trust are as follows:
 {¶ 41} "[T]o constitute an express trust there must be an explicit declaration of trust, * * * accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold *Page 9 
for the use of another." Hatch v. Lallo (Mar. 27, 2002), 9th Dist. No. 20642, at *1, quoting Ulmer v. Fulton (1935), 129 Ohio St. 323, 339-40.
 {¶ 42} Unless the settlor and the trustee of a trust are the same person or entity, the mere assertion that property is held in trust, without the transfer of the legal interest or title to the property, cannot create an express trust. Hatch, at *2.
 {¶ 43} As set forth in the statement of the facts and case, supra, the AMEC Doctrine and Discipline, provides in pertinent part:
 {¶ 44} "AuxilSection II. GENERAL CHURCH PROPERTY
 {¶ 45} "A. Purchase, Transfer
 {¶ 46} "The African Methodist Episcopal Church, Inc., is organized and functions soley as a connectional church. The title(s) to all real, personal and mixed property held at the General, Annual Conference level or by the local churches, shall be held IN TRUST for the African Methodist Episcopal Church, Inc., and subject to the provisions ofThe Doctrine and Discipline of the African Methodist EpiscopalChurch.
 {¶ 47} "However, the absence of an IN TRUST clause as indicated herein, in deeds, and documents of conveyances previously executed shall not exclude a local church from or relieve it of its Connectional character and responsibilities to the African Methodist Episcopal Church, Inc., nor shall the lack of the IN TRUST phrase excuse or absolve a local congregation, church agency or Board of Trustees of its responsibilities and accountability to the African Methodist Episcopal Church, Inc., provided, the intent and desires of the founders and of the later congregations or Board of Trustees have all demonstrated the following conduct: *Page 10 
 {¶ 48} "1. use of the name, customs, polity, or literature of the AME Church, Inc., in such a manner as to be known as a part of the AME church connection;
 {¶ 49} "2. conveyance of said property to the trustess of a local church or agency to the AME church, Inc.;
 {¶ 50} "3. the acceptance of the pastorate of ministers appointed by a bishop of an episcopal district or Annual Conference of the AME Church, Inc.;
 {¶ 51} "4. the payment of conference assessments or dues;
 {¶ 52} "5. the participation and enrollment of the church as a member of the connection of the AME Church, Inc., by said local church in the Quarterly Conference and the Annual Conferences.
 {¶ 53} "B. Local Church Property — Transfer of Property
 {¶ 54} "The Board of Trustees, duly elected by the local church as provided by the Doctrine and Discipline of the African MethodistEpiscopal Church, may take such steps to purchase, mortgage, sell, transfer and convey real and personal property, PROVIDED that such transfer has been duly approved by the resolution in Quarterly Conference of the said church, and also by the trustees of the Annual Conference in which the property is located, and of which the presiding bishop is president.
 {¶ 55} "The Board of Trustees of the local church holds the property IN TRUST for the General Church and not in their individual capacities. When the local church shall be incorporated, all property — real, personal, or mixed — shall be deeded to it in its corporate name, IN TRUST for the African Methodist Episcopal Church, Inc.
 {¶ 56} "The local church corporation shall shall have the power to sell, convey and dispose of both real and personal property as directed by The Doctrine and *Page 11 Discipline of the African Methodist Episcopal Church. The proceeds of or from the sale of any local church property shall be held IN TRUST for the African Methodist Episcopal Church or disbursed for another improvement of other property owned by it, or to be purchased by it. No property shall be sold except with the approval of the Quarterly Conference, by Resolution.
 {¶ 57} "C. Mortgaging Property
 {¶ 58} "The Board of Trustees and Incorporators of the local church, elected, and organized as prescribed in The Doctrine and Discipline ofthe African Methodist Episcopal Church, shall have the power to mortgage or encumber the property of the local church or corporation, PROVIDED such action has been authorized by majority vote of the membership present in a duly called Church Conference for this specific purpose. It shall be required that NOTICE of such meetings must be given fourteen (14) days previously, including two (2) Sundays, and such action must be approved by Resolution in a regular session of the Quarterly Conference. When a local church complies with the requirements set forth in this section, consent for the same is not necessary to be obtained from the African Methodist Episcopal Church, Incorporated. (Wherever these laws conflict with the laws of the state in which the property is located, the pastor and the Trustees shall proceed in a manner to conform with these laws).
 {¶ 59} "D. Abandoned Property
 {¶ 60} "If any church property is abandoned in consequence of the disbanding of the society, the title of said property shall be vested in the Annual Conference in which it is located. Said property shall be sold by the Annual Conference Trustees and the proceeds deposited in the Annual Conference treasury, to be used for mission work and *Page 12 
church extension in the conference in which said property is located. The funds shall be disbursed by the direction of the conference committee on church extension, with the approval of the Annual Conference. A duplicate record of the transaction shall be deposited with the General Secretary of the African Methodist Episcopal Church."
 {¶ 61} The Doctrine and Discipline provides any property deeded to St. Johns AME is deemed held in trust for AMEC by the local church subject to the provisions of the Doctrine and Discipline. Thus any property transferred by the Meades and Simpsons to St. Johns AME during St. Johns AME's affiliation with AMEC became the property of AMEC held in trust by St. Johns AME. It is the act of affiliation with AMEC that creates the transfer of property from St. Johns AME. Because St. Johns AME is both the settlor and trustee, no additional transfer was necessary to create the express trust.
 {¶ 62} St. Johns ceased to function as a local church of the AMEC when the congregation withdrew membership in the AMEC effective September 1, 2005. In July, 2006, when Appellants Jackson, Carter and Caul attempted to transfer the real property known as 1030 Cook Street, Uhrichsville, Ohio to Worship and Praise, they were not duly elected trustees of St. Johns. Appellants Carter and Caul were never elected trustees of St. Johns. Appellant Jackson served a one year term as trustee, which term would have expired on November 14, 2005, had the members of St. Johns AME not withdrawn from AMEC. As such, Appellants did not have authority to revoke the trust, or to convey the property. Further, the resolution authorizing transfer of the property was not approved by AMEC. Therefore, the quit claim deed of July 6, 2006 was void ab initio and ineffective to pass legal title to Worship and Praise. *Page 13 
 {¶ 63} The first assignment of error is overruled.
 II. {¶ 64} In the second assignment of error, Appellants argue the trial court erred in finding the property at 1026 Cook Street was included in the trust.[1] We agree.
 {¶ 65} As stated supra, the property adjoining the church was purchased with the proceeds of a mortgage secured by 1030 Cook Street. Both the execution of the first mortgage on July 6, 2006, and the purchase of the adjoining property occurred after Appellants withdrawal from AMEC.
 {¶ 66} Although the July 6, 2006 mortgage was purportedly secured by 1030 Cook Street, we found in our discussion of Assignment of Error No. 1 the 1030 Cook Street property did not belong to Appellants, but was held in trust for AMEC. Nevertheless, we find AMEC does not have an interest in the property located at 1026 Cook Street. Rather, the parties to that transaction were Appellants acting on behalf of Worship and Praise with First National as lender. The parcel of property located at 1026 Cook Street was never subject to the AMEC Doctrine andDiscipline trust provisions.
 {¶ 67} The second assignment of error is sustained.
 III. {¶ 68} In the third assignment of error, Appellants argue the trial court erred in granting AMEC leave to amend their complaint to include the parcel of property located at 1026 Cook Street. *Page 14 
 {¶ 69} A trial court's determination whether to grant a motion for leave to amend a complaint will not be reversed on appeal absent an abuse of discretion. Darulis v. Ayers (Feb. 2, 1999), 5th Dist. No. 1996CA00398 citing Cselpes v. Cleveland Catholic-Diocese (1996),109 Ohio App.3d 533, 541, 672 N.E.2d 724. To demonstrate abuse of discretion in granting or denying a motion for leave to amend a complaint, appellant must demonstrate more than error of law and that the trial court's denial of the motion was unreasonable, arbitrary or unconscionable. Id.
 {¶ 70} Pursuant to Civ. R. 15(A),
 {¶ 71} "A party may amend his pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, he may so amend it at any time within twenty-eight days after it is served. Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within fourteen days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders."
 {¶ 72} The Ohio Supreme Court has held "it is an abuse of discretion for a court to deny a motion, timely filed, * * *, where it is possible that plaintiff may state a claim upon which relief may be granted and no reason otherwise justifying denial of the motion is disclosed."Peterson v. Teodosio (1973), 34 Ohio St.2d 161, 297 N.E.2d 113, paragraph six of the syllabus. *Page 15 
 {¶ 73} The Ohio Supreme Court refined the holding inPeterson, supra, by adopting the test found in Solowitch v. Bennett
(1982), 8 Ohio App.3d 115, 117, 456 N.E.2d 562, that "there must be at least a prima facie showing that the movant can marshal support for the new matters sought to be pleaded, and that the amendment is not simply a delaying tactic, nor one which would cause prejudice to the defendant."Wilmington Steel Products, Inc. v. Cleve. Elec. Illum. Co. (1991),60 Ohio St.3d 120, 123, 573 N.E.2d 622, syllabus.
 {¶ 74} Civ. R. 15(A) allows for liberal amendment, and the trial court does not abuse its discretion if it denies a motion to amend pleadings if there is a showing of bad faith, undue delay or undue prejudice to the opposing party. Hoover v. Sumlin (1984), 12 Ohio St.3d 1,465 N.E.2d 377, paragraph two of syllabus; Turner v. Cent. Local School Dist.,85 Ohio St.3d, 95, 99, 1999-Ohio-207, 706 N.E.2d 1261.
 {¶ 75} Here, Appellants have not demonstrated AMEC sought leave to amend the complaint in bad faith, with purpose of delay or in prejudice to Appellants. Accordingly, the trial court did not abuse its discretion in allowing AMEC leave to amend the complaint.
 {¶ 76} The third assignment of error is overruled.[2]
 IV. {¶ 77} In the fourth assignment of error, Appellants maintains the trial court abused its discretion in allowing AMEC to present a witness at trial whom AMEC identified less than two weeks prior to trial. *Page 16 
 {¶ 78} Civil Rule 26(E) states:
 {¶ 79} "A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
 {¶ 80} "(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.
 {¶ 81} "(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response.
 {¶ 82} "(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through requests for supplementation of prior responses."
 {¶ 83} On February 14, 2008, AMEC provided Appellants with supplemental discovery responses, including the identification of Presiding Elder Gatewood as a witness, not previously identified. Appellants filed a motion in limine to preclude the testimony, which the trial court denied. At trial, Appellants objected to Gatewood's testimony.
 {¶ 84} Upon review of the record, the trial court did not establish a deadline for the disclosure of witnesses. Rather, the trial court ordered the deadline for discovery to be completed was June 15, 2007. AMEC filed their supplementary responses to discovery prior to trial. Further, Appellants have not demonstrated prejudice as a result *Page 17 
of any error in allowing the testimony of Gatewood. Accordingly, we find the trial court did not abuse its discretion in allowing the testimony.
 {¶ 85} The fourth assignment of error is overruled.
 V., VI. {¶ 86} Appellants' fifth and sixth assignments of error raise common and interrelated issues; therefore, we will discuss the arguments together.
 {¶ 87} Appellants maintain AMEC failed to join The Third Episcopal District of the African Methodist Church's Annual Conference, a member of and subordinate to the AMEC as stated in the trial court findings. Appellants assert the named plaintiff, AMEC, is not a legally incorporated or organized entity in the State of Ohio; rather, the proper party in interest is The Third Episcopal District of the African Methodist Church.
 {¶ 88} Appellants cite the Doctrine and Discipline language set forth in our analysis and disposition of the first assignment of error.
 {¶ 89} "[I]f any church property is abandoned in consequence of the disbanding of the society, the title of said property shall be vested in the Annual Conference in which it is located."
 {¶ 90} The trial court's entry states "the real property of St. Johns must be conveyed to the Trustees of the Third District's Annual Conference as required by the customs and regulations of the AME (the Doctrine and Discipline)."
 {¶ 91} We find the trial court correctly found the Meades and Simpsons deeded property to St. Johns AME to be held in trust by it for the benefit of AMEC. The trial court properly concluded, pursuant to AMEC'sDoctrine and Discipline, the property should be transferred to the Annual Conference of The Third Episcopal District of the *Page 18 
AM EC to be held in trust for AM EC, the beneficiary of the trust and therefore the proper party plaintiff.
 {¶ 92} The fifth and sixth assignments of error are overruled.
 VII. {¶ 93} In the seventh assignment of error, Appellants maintain the trial court erred in awarding AMEC the personal property after AMEC dismissed their claim to the property in the opening statements and the trial court precluded questioning relative to the same. We agree.
 {¶ 94} Appellants cite the following exchange during opening statements:
 {¶ 95} "The Court: You may proceed.
 {¶ 96} "Mr. Zurz: Judge, again, for the record my name is Rick Zurz. I represent the Plaintiff, The African Methodist Episcopal Church.
 {¶ 97} "Let me tell you what we're not proceeding on today, Your Honor. We are not proceeding on any claims against the personal property of Worship and Praise, or what was the personal property of St. Johns A.M.E. Church. We are not asking this Court in addition for any punitive damages. We will be proceeding on the rest of our complaint."
 {¶ 98} Tr. at 36.
 {¶ 99} Further, during the course of trial, the following exchange occurred:
 {¶ 100} "Q. At any time in the months proceeding September 1st did the Trustees sign any papers saying that they wanted to transfer the personal property of St. Johns A.M.E. to some other church like the Worship and Praise or to an independent church? *Page 19 
 {¶ 101} "Mr. Jackson: Objection; irrelevant, Your Honor. The claims regarding the personal property have been dropped by the Plaintiff.
 {¶ 102} "The Court: Your response, Vivian?
 {¶ 103} "Ms. Tate: I'm not aware if they were dropped, Your Honor. I guess I need to be clearer on that.
 {¶ 104} "Mr. Zurz: Judge, we did indicate we're not seeking judgment for personal property, although it may be relevant to the issue of continuation as St. Johns or migration into an independent congregation.
 {¶ 105} "Ms. Tate: And do you mind, Your Honor, if I ask him — this was mentioned in the context of your opening statement?
 {¶ 106} "Mr. Zurz: Correct.
 {¶ 107} "Ms. Tate: Okay. So I wasn't aware that —
 {¶ 108} "The Court: It was in the context of the opening statement. I'm going to sustain, Vivian, and you can proceed on now."
 {¶ 109} Tr. at 428-429.
 {¶ 110} Based upon the above, it is clear AMEC indicated an intent not to prosecute the claim for personal property at trial. In consideration of the stated intent, the trial court did not allow questioning, nor did Appellants offer evidence or argument relative thereto. Accordingly, the seventh assignment of error is sustained, and that portion of the trial court's entry awarding personal property to AMEC is reversed.
 VIII. {¶ 111} Appellants' eighth assignment of error argues the trial court incorrectly permitted testimony in violation of the Ohio Civil Rules. Specifically, Appellants cite the *Page 20 
testimony of Presiding Elder Gatewood and Bishop Liggins, as well as the testimony of Archie Jackson.
 {¶ 112} It is well settled in Ohio the admission or exclusion of evidence is within the discretion of the trial court. We find no abuse herein. Furthermore, Appellants have not demonstrated prejudice as a result of their testimony as the Doctrine and Disciplines speaks for itself.
 {¶ 113} The eighth assignment of error is overruled.
 IX, X. {¶ 114} Appellants' ninth and tenth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
 {¶ 115} Appellants assert the trial court improperly denied their motion for summary judgment and motion for directed verdict based upon the arguments presented herein. In conformity with our analysis and disposition of Appellants' first eight assignments of error, we do not find the trial court erred in denying the motion for summary judgment or the motion for directed verdict.
 {¶ 116} Appellants' ninth and tenth assignments of error are overruled. *Page 21 
 {¶ 117} The April 25, 2008 Judgment Entry of the Tuscarawas County Court of Common Pleas is affirmed, in part, and reversed, in part.
Hoffman, P.J., Wise, J. and Edwards, J. concur. *Page 22 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment entry of the Tuscarawas County Court of Common Pleas is affirmed, in part, and reversed, in part. Costs to be divided equally.
[1] Appellants' brief erroneously refers to 1030 Cook Street, but the assigned error relates to the property purchased by Worship and Praise, known as 1026 Cook Street.
[2] Assuming arguendo, the trial court has abused its discretion in allowing the amendment, we would find no prejudice accrued to Appellants in light of our disposition of Assignment of Error No. 2. *Page 1