[Cite as *Ohio Dist. Council, Inc. of the Assemblies of God v. Speelman*, 2016-Ohio-751.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

OHIO DISTRICT COUNCIL, INC. OF THE : 
ASSEMBLIES OF GOD, et al.,

:      CASE NO. CA2015-02-031

    Plaintiffs-Appellants,

:      O P I N I O N
           2/29/2016

  - vs -                  :

:

PATRICIA M. SPEELMAN, et al.,

:

    Defendants-Appellees.

:

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CV2011-12-4362

Taft Stettinius & Hollister LLP, Donald C. Brey, Celia M. Kilgard, 65 East State Street, Suite 1000, Columbus, Ohio 43215, for plaintiffs-appellants, Ohio District Council, Inc. and Christian Assembly of God

Bill W. Cummins, 8216 Princeton Glendale Road, Suite 162, West Chester, Ohio 45069 and Eric B. Hershberger, 862 Bluff View Drive, Columbus, Ohio 43235, for defendants-appellees, Patricia M. Speelman, Dennis Speelman, Samuel Matthew Morgan, and Fellowship of Praise Church of God, Inc.

**RINGLAND, J.**

{¶ 1} Plaintiff-appellant, the Ohio District Council, Inc. of the Assemblies of God ("ODC"), appeals the decision of the Butler County Court of Common Pleas granting judgment in favor of defendants-appellees, Patricia and Dennis Speelman, Samuel Morgan,

and Fellowship of Praise Church of God, Inc. For the reasons detailed below, we reverse and remand for further proceedings.

{¶ 2} Assemblies of God is a national church organization. ODC is an organization of Ohio assemblies within the Assemblies of God. This case involves the legal significance of the affiliation of Christian Assembly, a local congregation, with the Assemblies of God and ODC and, more specifically, which body governs Christian Assembly and owns Christian Assembly's real property.

{¶ 3} In 1967, New Life Temple ("New Life") incorporated as an Ohio entity, retaining the right to acquire, hold, and dispose of real estate or chattels. New Life subsequently purchased two tracts of land in Middletown, Ohio to serve as a worship facility ("Property"). The Property is a subject of the present conflict between the parties.

{¶ 4} In 1972, New Life, which had been operating informally as Christian Assembly, applied for affiliation status with the General Council of the Assemblies of God. The application stated:

> Having considered prayerfully the principles and purposes of the Assemblies of God fellowship, and having a desire to share in the privileges of that fellowship and a purpose to co-operate with other assemblies of like precious faith in *assuming the responsibilities incidental thereto as set forth in the Constitution and Bylaws of the General Council, and the Constitution and Bylaws of the Ohio District Council*, we, whose names appear on the assembly membership roll as members in good standing on this 25th day of July in the year 1972 do hereby make voluntary application to the Executive Presbytery of the General Council of the Assemblies of God for official recognition of our assembly, and for enrollment upon the records of the General Council.

(Emphasis added). Assemblies of God subsequently approved the application for affiliation.

{¶ 5} Assemblies of God is a hierarchical church organization consisting of three tiers of subordination, in descending order: (1) the general council representing the highest tier; (2) district councils, such as ODC, representing a mid-tier status; and (3) local churches. The

local church level is further organized into separate designations. Relevant to this case, a local church may either be affiliated with the general council or affiliated with the district council.

{¶ 6} As originally constituted, New Life was recognized as a "general council affiliated" assembly and was permitted their own board and operated independently. The ODC constitution in affiliation with Assemblies of God recognized that local churches affiliated with the general council, such as New Life, retained the right to acquire and hold property. The approval of scriptural doctrine and the authority to withdraw certificates of membership was retained by the general council.

{¶ 7} ODC's constitution also outlined various eligibility requirements for a local church to maintain its status as general council affiliated. For example, the ODC constitution required local churches to consist of a minimum of 25 members, which was subsequently amended to 20 members. In the event that the members of a general council affiliated local church dropped below the minimum membership level, the local church would then revert to the status of a district counsel affiliated local church "until minimum requirements for sovereignty have been regained." As a result, the local church would revert to the control of the ODC, title to any property would be held by ODC, and ODC would serve as board of trustees until such time as the entity "attained the degree of maturity to justify sovereignty."

{¶ 8} In 1978, New Life amended its articles of incorporation and formally changed its name to Christian Assembly. Thereafter, Christian Assembly adopted a constitution and by-laws. As relevant here, Christian Assembly's constitution stated that it was a sovereign assembly in "full cooperative fellowship with assemblies of like precious faith associated in the [ODC] * * * and the [Assemblies of God]." The constitution and regulations also included provisions for the election and removal of officers and recognized its right to own and dispose of property, including the manner of acquiring and selling of such property. The 1978

constitution further provided that Christian Assembly will "share in the privileges and responsibilities enjoined by the affiliation" with ODC and the Assemblies of God.

{¶ 9} Several decades later, in 2006, Christian Assembly was facing a dwindling congregation and loss of its pastor. As a result, in April 2006, Christian Assembly voted to install Dennis Speelman as its pastor and his wife, Patricia, as its statutory agent. Speelman was not credentialed by the Assemblies of God to serve as a pastor. Thereafter, in June 2007, Christian Assembly reported less than 20 active voting members for two consecutive years, thereby prompting the general council to notify Speelman that Christian Assembly would no longer be affiliated with the general council, but would instead be affiliated with the district council.

{¶ 10} In 2008, Speelman visited the Fellowship of Praise Church of God ("FOP") and met its pastor, Samuel Matthew Morgan. Two years later, in 2010, Christian Assembly fell behind in its financial obligations and a federal tax lien was placed on the Property. Due to its financial difficulties, Speelman began exploring the possibility of disaffiliating with Assemblies of God. Speelman then met with Morgan and arranged for FOP to loan money to Christian Assembly to bring its debts current.

{¶ 11} In December 2010, Christian Assembly held a business meeting and elected a new board of trustees. The new board approved a promissory note in favor of FOP and used those proceeds to satisfy its mortgage on the Property. Subsequently, in March 2011, the Christian Assembly board of trustees voted to disaffiliate with the Assemblies of God and notified the general council of their decision. The board of trustees for Christian Assembly then voted to merge Christian Assembly with FOP and transfer day-to-day management to FOP. On May 26, 2011, a deed was recorded conveying the Property from Christian Assembly to FOP.

{¶ 12} After learning of these actions, ODC adopted a resolution finding Christian

Assembly had breached the constitution and by-laws of the organization. The resolution specified that Christian Assembly was a district council affiliated local church and therefore subject to the control of ODC. The resolution also sought to remove Speelman as the pastor of Christian Assembly and to secure the ownership of the Property that was conveyed to FOP.

{¶ 13} In December of 2011, ODC filed a complaint against the Speelmans, Morgan, and FOP requesting various declarations, including that the disaffiliation with the Assemblies of God, the merger with FOP, and the conveyance of the real property were void and that the Property was to be held in trust for ODC in affiliation with Assemblies of God. The complaint also sought judicial determinations that Christian Assembly remained affiliated with the district council, thereby resolving that Speelman and the board of trustees had no authority to transfer the Property and ODC was authorized to remove Speelman as pastor. ODC further sought restitution of the Property and requested injunctive relief prohibiting further interference with its assets. Finally, ODC asserted claims for civil conspiracy, fraud, and conversion in connection with the merger of Christian Assembly into FOP and the conveyance of the Property.

{¶ 14} Following a bench trial, the trial court granted judgment in favor of the Speelmans, Morgan, and FOP. In so holding, the trial court found that the merger with FOP and conveyance of the Property was within the corporate power of the local church. The trial court, however, declined to resolve certain issues with respect to ODC's claims that Christian Assembly reverted to the control of ODC under the relevant by-laws after concluding that those matters were a matter of religious concern and not subject to review by a secular court. Accordingly, Christian Assembly prevailed on all claims. ODC now appeals from this decision, raising the following two assignments of error for review.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN FAILING TO APPLY NEUTRAL PRINCIPLES OF LAW APPLICABLE TO THE ASSEMBLIES OF GOD AS A HIERARCHICAL STRUCTURED BODY.

{¶ 17} Assignment of Error No. 2:

{¶ 18} THE TRIAL COURT ERRED BY FAILING TO MAKE A DETERMINATION OF RIGHTS UNDER THE CLAIMS FOR DECLARATORY JUDGMENT AND FINDING JUDGMENT IN FAVOR OF THE DEFENDANTS.

{¶ 19} We will address the assignments of error together. It is well established that civil courts lack jurisdiction to hear or determine purely ecclesiastical or spiritual disputes of a church or religious organization. *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 40 (8th Dist.1994). This is known as the ecclesiastical abstention doctrine. *Harrison v. Bishop*, 6th Dist. Lucas No. L-14-1137, 2015-Ohio-5308, ¶ 19. The doctrine is a recognition that "[a]ll who unite themselves to such a body [i.e., the church] do so with an implied consent to [its] government, and are bound to submit to it. * * * It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for." *Plough v. Lavelle*, 170 Ohio App.3d 720, 2006-Ohio-6200, ¶ 16 (11th Dist.).

{¶ 20} "It is obvious, however, that not every civil court decision as to property claimed by a religious organization jeopardizes values protected by the First Amendment." *Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Mem'l. Presbyterian Church*, 393 U.S. 440, 449, 89 S.Ct. 601 (1969).

> Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. And there are neutral principles of law, developed for use in all property disputes, which can be applied without "establishing" churches to which property is awarded.

*Id.*

{¶ 21} "Ohio appellate courts have fashioned the ecclesiastical abstention doctrine into a two-part test to determine whether a court has subject matter jurisdiction over a church dispute." *Harrison* at ¶ 41, citing *Bhatti v. Singh*, 148 Ohio App.3d 386, 2002-Ohio-3348, ¶ 25 (12th Dist.). First, the court must determine whether the church is a hierarchical or congregational church. *Tibbs*, 93 Ohio App. 3d at 43; *State ex rel. Morrow v. Hill*, 51 Ohio St.2d 74 (1977), syllabus ("[t]he issue of whether the local church is a part of a hierarchical church organization is a proper matter for determination by the appropriate court").

{¶ 22} A hierarchical church is one in which a local church is a subordinate member of a general church "in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization." *Morrow* at 76.[1] If the trial court finds that a local church is part of a hierarchical polity, then the "civil courts will be bound to give effect to the result indicated by the parties provided it is embodied in some legally cognizable form." *Jones v. Wolf*, 443 U.S. 595, 606, 99 S.Ct. 3020 (1979); *African Methodist Episcopal Church, Inc. v. St. Johns African Methodist Episcopal Church of Uhrichsville, Ohio*, 5th Dist. Tuscarawas No. 08AP050037, 2009-Ohio-1394, ¶ 38.

**The Trial Court's Decision**

{¶ 23} In the present case, the trial court granted judgment in favor of the Speelmans, FOP, and Morgan. The trial court's decision essentially relied on three conclusions of law concerning the dispositive issues in the case. First, the trial court dismissed the claims by

---

1. A congregational church, on the other hand, exists when "a religious * * * congregation which, by the nature of its organization, is strictly independent of other ecclesiastical associations, and so far as church government is concerned, owes no fealty or obligation to any higher authority." *Id.* If the organization is congregational, then the court determines whether the dispute is ecclesiastical or secular in nature. *Tibbs*, 93 Ohio App.3d at 43. The court maintains jurisdiction over secular issues. *Id.* at 42.

ODC that Christian Assembly was subject to ODC authority on the basis that those issues involved ecclesiastic matters, and therefore, "[a]pplying the principles of deference and neutrality set forth by the United States Supreme Court and adopted by the Supreme Court of Ohio, this Court finds that it has no authority to pass judgment on those actions."

{¶ 24} Next, the trial court found that "neither Christian Assembly nor its predecessor adopted the constitutions and bylaws" of the Assemblies of God or ODC. In so doing, the trial court found that Christian Assembly's 1978 constitution and by-laws governed, and "[t]hose regulations do not indicate an intention to be bound by the constitutions and bylaws of the [Assemblies of God] and the ODC or otherwise incorporate them by reference." The trial court reasoned that Christian Assembly's regulations clearly and unambiguously indicate that Christian Assembly was a sovereign entity governed by its constitutions and by-laws alone. Furthermore, the trial court found:

> The fact that Christian Assembly affiliated with the Assemblies of God, referenced the affiliation in its regulations, and participated within the denomination does not mean that its management could be appointed or was controlled by the ODC or the [Assemblies of God], absent corporate documents or Ohio law so providing. There is no provision in Christian Assembly's regulations delegating to an outside entity the power to manage the corporation that is vested in the members and officers. The Court is not aware of a provision of Ohio law allowing same.

Accordingly, the trial court found that the constitutions and by-laws of the general council and ODC were inapplicable and restricted its analysis to Christian Assembly's constitution, by-laws, and the relevant provisions governing non-profit corporations in holding that Christian Assembly was "permitted under Ohio law to disaffiliate from the Assemblies of God, merge itself out of existence, and transfer its property to FOP."

{¶ 25} Finally, the trial court addressed ODC's claims that the Property be held in trust, as well as the separate claims of fraud, conversion, and civil conspiracy. In denying ODC's claims for relief, the trial court first noted its finding that Christian Assembly did not adopt the

ODC provisions related to the control of property and "ODC's unilateral declaration of trust in this instance is insufficient to create an express trust." Continuing, the trial court declined to find a constructive trust on the property and dismissed the remaining tort claims and eviction action, as those issues were "predicated on ODC having a legitimate ownership interest in or immediate right of possession to Christian Assembly's property."

### Determination of Polity and Standing

{¶ 26} In reviewing ODC's two assignments of error, we begin by addressing the issue of polity and whether this court may decide this issue based on neutral principles of law. Here, the trial court made inconsistent findings with respect to polity and the significance of affiliation. Initially, however, we note that the trial court did find that Assemblies of God was a hierarchical church and Christian Assembly had entered into a voluntary affiliation with Assemblies of God (i.e., the national church). The evidence of Christian Assembly's affiliation with Assemblies of God is well supported by the record. In fact, neither party disputes that Christian Assembly and Assemblies of God had been affiliated for more than 40 years prior to the actions giving rise to the present dispute. There is no doubt that Christian Assembly was affiliated with Assemblies of God, as evidenced by Christian Assembly's attempt to *disaffiliate* with Assemblies of God.

{¶ 27} Rather, the central dispute between the parties involved whether the authority to convey the Property and merge with FOP was vested in Christian Assembly or ODC. ODC claims that the actions taken by Speelman and Christian Assembly were not authorized, as Christian Assembly was a "district council affiliated" entity subject to ODC's constitution. This issue is significant, as the ODC constitution provides that "district council affiliated" assemblies are subject to ODC, which acts as the board of trustees, and holds title to its real property. However, in resolving this issue, the trial court merely found that Assemblies of God was a hierarchical church, and therefore, "[a]pplying the principles of deference and

neutrality set forth by the United States Supreme Court and adopted by the Supreme Court of Ohio, this Court finds that it has no authority to pass judgment on those actions." Continuing, the trial court noted that the decision to remove Speelman or the issue surrounding Christian Assembly's affiliation status (i.e., general council affiliated or district council affiliated) within the denomination could not be decided, as those were ecclesiastical issues.

{¶ 28} The issues surrounding the removal of Speelman as pastor and Christian Assembly's affiliation status within the Assemblies of God organization did not involve an improper determination of ecclesiastical issues. Moreover, contrary to the trial court's claim otherwise, we find the trial court did have the authority to determine Christian Assembly's status in the denomination, as that determination is crucial in deciding whether Christian Assembly is a hierarchical or a congregational church. As noted by the Ohio Supreme Court in *Morrow*, "[t]he issue of whether the local church is a part of a hierarchical church organization is a proper matter for determination by the appropriate court." *Id.* at syllabus.

{¶ 29} A similar issue was considered by the Fifth District Court of Appeals in *African Methodist Episcopal Church*. There, the court decided a dispute between a local church and a national church organization, the African Methodist Episcopal Church ("AMEC"). *Id.*, 2009-Ohio-1394 at ¶ 1. As in the present case, the national church brought an action against a local church and the local church's successor, seeking a declaration that it owned all of the local church's property when the members of the local church voted to leave the national church. *Id.* at ¶ 20-24. On appeal, the Fifth District affirmed the decision of the trial court finding that the real property at issue was held by the local church in express trust for the national church, as provided in the national church's doctrine and disciples. *Id.* at ¶ 62. In so doing, the court first found that the local church was a hierarchical church and, as such, was

"bound to follow the laws of the general church." *Id.* at ¶ 36. [2] Accordingly, after finding the property was held in trust for the national church, the court affirmed the trial court's decision. *Id.* at ¶ 61.

{¶ 30} The reluctance of the trial court to address the issue of control over the local church is understandable in light of the litany of cases providing that "ecclesiastical matters, including the decision as to who should 'preach from the pulpit,' are outside of the state courts' jurisdiction." *State ex rel. First New Shiloh Baptist Church v. Meagher*, 1st Dist. Hamilton No. C-960371, 1997 WL 180266, at *1 (Apr. 16, 1997). *See, e.g., Tibbs*, 93 Ohio App.3d 35 (affirming dismissal in an action seeking resolution of ecclesiastical issues). However, "[m]atters of ecclesiastical abstention are often not clear-cut." *Smith v. White*, 2d Dist. Montgomery No. 25622, 2014-Ohio-130, ¶ 48; *Harrison*, 2015-Ohio-5308 at ¶ 52.

{¶ 31} A judicial determination with respect to the significance of Christian Assembly's affiliation involves no ecclesiastical issues. Here, the parties have presented evidence of constitutions, by-laws, applications for affiliation, as well as ample testimony regarding the structure of the presbytery. The resolution of that matter does not involve the weighing of any controversies concerning religious doctrines, tenets, or practices. *See State ex rel. Morrow v. Hill*, 51 Ohio St.2d 74. Instead, we find the resolution of this issue may be done utilizing the application of "neutral based" principles, while recognizing "[t]he necessity of civil courts resolving this type of dispute is inherent in the nature of the dispute." *Morrow* at 80.

{¶ 32} In so finding, we overrule the trial court's decision finding it had no authority to decide the issues surrounding the removal of Speelman as pastor or Christian Assembly's

---

2. We note that, unlike the present case, the local church in AMEC did not have its own corporate by-laws. However, the existence of a separate corporate identity does not necessarily mean that a local church is not hierarchical. *See, e.g., Southern Ohio State Executive Offices of Church of God v. Fairborn Church of God*, 61 Ohio App.3d 526 (2d Dist.1989). Rather, as noted by the Court in *Morrow*, the issue of whether a local church is part of a hierarchical church organization involves the "utilization of a broad spectrum of factual matter demonstrating the local church's participation in the affairs of the national church." *Morrow* at syllabus.

status within the denomination. Although we recognize that neutral principles of law prohibit a court from ordering the removal of a pastor or interpreting matters of religious order, such is not the case in the present dispute. Although a fine distinction, that issue is different than applying neutral principles of law to determine whether governing documents authorize a particular entity to make certain determinations. *See, e.g., Winston v. Second Baptist Missionary Church of Lorain*, 9th Dist. Lorain No. 96CA006588, 1997 WL 576374, at *2 (Sept. 10, 1997) ("a civil court does not offend the First Amendment by inquiring into whether a meeting * * * was properly called and properly conducted * * * [s]uch elections must be made in accordance with the society's constitution and by-laws"). The trial court was not called upon to determine whether Speelman should be pastor or to determine matters of religious concern. Rather, the trial court was called upon to determine which body was authorized to make those determinations and to defer to the determination of the authorized body.

{¶ 33} Moreover, we further find that the trial court's resolution of this issue, as a practical matter, produced an inconsistent result. As previously noted, the trial court found that Assemblies of God was a hierarchical polity, yet citing principles of "deference and neutrality," the trial court declined to address any of the actions taken by ODC in seeking the removal of Speelman as pastor and the return of the Property. The problem with that approach, however, is that the critical actions related to the Property, i.e., the sale and merger with FOP, had already taken place prior to the time that ODC attempted to retain possession and control of the local church.

**Christian Assembly was a Local Church in a Hierarchical Polity**

{¶ 34} We next address the trial court's decision with respect to the effect that Christian Assembly's affiliation with Assemblies of God had on the relationship between the parties. As previously noted, the trial court found that Assemblies of God was a hierarchical

church and Christian Assembly had voluntarily entered into affiliation with Assemblies of God. The evidence of Christian Assembly's affiliation with Assemblies of God is well supported by the record.

{¶ 35} However, the trial court did not consider ODC's governing documents in its resolution of this issue. The trial court resolved that those documents were not relevant, as Christian Assembly adopted its own constitution and by-laws in 1978, which did not expressly adopt ODC's or the Assemblies of God's constitution. Yet, such a conclusion ignores the nature of a hierarchical polity, as one in which:

> the religious congregation * * * is but a subordinate member of some general church organization in which there are superior ecclesiastical tribunals with a general and ultimate power of control more or less complete, in some supreme judicatory over the whole membership of that general organization

*Morrow*, 51 Ohio St.2d at 76; *African Methodist Episcopal Church, Inc.*, 2009-Ohio-1394 at ¶ 36 ("[a] hierarchal or connectional church is one in which a local church is a subordinate member of a general church which has complete control over the entire membership of the general church"). More specifically, "[a]n individual church is bound to follow the laws of the general church." *African Methodist Episcopal Church*, 2009-Ohio-1394 at ¶ 36; *See Bhatti*, 2002-Ohio-3348 at ¶ 27 ("A religious organization is governed by whatever constitution, rules, and processes it has put in place for itself").

{¶ 36} The Second District Court of Appeals considered a similar issue in *Southern Ohio State Executive Offices of Church of God v. Fairborn Church of God*, 61 Ohio App.3d 526, 538 (2d Dist.1989). There, the court found that a local church and a national church were affiliated in a hierarchical polity and, as such, the resolution of a property dispute between the local church and the national church could be resolved by considering the governing documents of the national church. *Id.* Furthermore, the holding in *Fairborn* is consistent with *African Methodist Episcopal Church*, 2009-Ohio-1394, insofar as a local

church in a hierarchical polity is subject to the governing documents of its general church.

{¶ 37} Here, the trial court did not consider the governing documents of ODC on the basis that Christian Assembly did not specifically adopt those provisions in its constitution and by-laws. However, consistent with decisions such as *Morrow, Fairborn,* and *African Methodist Episcopal Church*, the affiliation between Christian Assembly and Assemblies of God subordinated Christian Assembly to the laws of the general church, including ODC's constitution and by-laws.

{¶ 38} Christian Assembly specifically subordinated its sovereignty to the Assemblies of God and ODC. Christian Assembly's 1972 application for affiliation with the Assemblies of God provided, in part, that it was "assuming the responsibilities incidental thereto as set forth in the Constitution and Bylaws of the General Council, and the Constitution and Bylaws of the Ohio District Council." In addition, Christian Assembly's 1978 constitution provided that it would "share in the * * * responsibilities enjoined by the affiliation" with the Assemblies of God.

{¶ 39} Based upon the nature of the relationship incident to affiliation in a hierarchical church polity as described in *Morrow, Fairborn,* and *African Methodist Episcopal Church* and Christian Assembly's assumption of the responsibilities set forth within the constitution and by-laws of the general council and ODC and those enjoined by its affiliation with the Assemblies of God pursuant to its 1972 application for affiliation and 1978 constitution, we find that Christian Assembly is subject to the constitutions and by-laws of the general council and ODC and that the trial court erred in failing to consider those documents in ruling upon this matter.

{¶ 40} Accordingly, we reversed and remand this matter for the trial court to construe the relevant provisions of the ODC and Assemblies of God constitutions and by-laws in conformity with its findings that Christian Assembly is a local church affiliated in a hierarchical

polity with the ODC and Assemblies of God.

**{¶ 41}** Although we find that the trial court erred by failing to construe the relevant provisions in ODC's constitution and by-laws, we decline to address the remaining issues related to the ownership of the property. As noted in *Kelemen*, an Ohio court employing neutral principals of law in a property dispute case must refer to documents reflecting the "ordinary indicia of property rights," which may be present in constitutional documents of the general denominational church. *Kelemen*, 21 Ohio St.2d at 160; *Fairborn*, 61 Ohio App.3d at 538. In *Jones*, the court held:

> Under the neutral-principles approach, the outcome of a church property dispute is not foreordained. At any time before the dispute erupts, the parties can ensure, if they so desire, that the faction loyal to the hierarchical church will retain the church property. They can modify the deeds or the corporate charter to include a right of reversion or trust in favor of the general church. Alternatively, the constitution of the general church can be made to recite an express trust in favor of the denominational church. The burden involved in taking such steps will be minimal. And the civil courts will be bound to give effect to the result indicated by the parties, provided it is embodied in some legally cognizable form.

*Jones*, 443 U.S. at 606.

**{¶ 42}** Thus, *Jones* established the neutral-principles doctrine and provided guidance with respect to the extent to which courts may look to church documents in resolving property disputes. However, it left the matter of what constitutes a "legally cognizable form" for determination under state law. *Eastminster Presbytery v. Stark & Knoll*, 9th Dist. Summit No. 25623, 2012-Ohio-900, ¶ 14. In Ohio, courts have sanctioned the use of an express trust in a church constitution as a means of securing church property, provided, again, that the trust would have to be "embodied in some legally cognizable form." *African Methodist Episcopal Church*, 2009-Ohio-1394 at ¶ 39. Therefore, we reverse the trial court's decision and remand this matter for the trial court to apply the relevant constitutions and by-laws of ODC to the

property dispute between the parties.

## Remaining Unresolved Issues

{¶ 43} The affiliation between Christian Assembly and Assemblies of God subjects it to the laws of the general church. Accordingly, we remand this matter for the trial court to consider the relevant provisions of the ODC and Assemblies of God constitutions and by-laws as they apply to the property dispute. Our resolution of this issue will necessarily impact the remaining issues and controversies. For example, ODC's tort claims and eviction action are premised on a finding that ODC has a legitimate interest in the Property.

{¶ 44} Judgment reversed and remanded.

M. POWELL, P.J., and HENDRICKSON, J., concur.