SERBIAN ORTHODOX CHURCH CONGREGATION OF ST. DEMETRIUS OF AKRON, OHIO, APPELLANT, *v.* KELEMEN ET AL., APPELLEES.

(No. 41380—Decided March 4, 1970.)

*Messrs. Roetzel, Hunsicker & Michaels, Mr. Bernard R. Roetzel* and *Mr. Bernard J. Roetzel,* for appellant.
*Messrs. Gillen, Miller & Morris* and *Mr. Frederick H. Gillen,* for appellees.

*Per Curiam.* This case is before the court upon remand by the Supreme Court of the United States for further consideration in light of that court's decision in *Presbyterian Church in the United States* v. *Mary Elizabeth Blue Hull Memorial Presbyterian Church* (1969), 393 U. S. 440, 89 S. Ct. 601.

Before a controversy arose in 1963, both plaintiff and defendants were a part of the church membership of the Serbian Orthodox Church Congregation of St. Demetrius of Akron, Ohio. The plaintiff is now an unincorporated association in possession and control of the church property and uses the church name. Defendants are out of possession of the church property and claim to be parishioners of the Serbian Orthodox Church of St. Demetrius of Akron, Ohio, describing themselves as St. Demetrius Church Parishioners for the Unity of the Serbian Orthodox Church, Akron, Ohio, and the ''Committee for St. Demetrius Church Parishioners for the Unity of the Serbian Orthodox Church, Akron, Ohio.''

In the instant case, plaintiff seeks to enjoin defend-

ants from using the name "St. Demetrius," or "St. Demetrius Church," or "St. Demetrius Church Parishioners." Defendants' cross-petition essentially asks the court to hold that plaintiff is unlawfully withholding and usurping defendants' rights to the use of the church property; that plaintiff be enjoined from the prosecution of this action and from representing itself to be the Serbian Orthodox Church Congregation of St. Demetrius of Akron, Ohio; that plaintiff also be restrained from exerting any further control over the church's affairs, management, and control of the property and assets of the church; and that all such control be transferred to a temporary "Caretaker Board."

The Court of Common Pleas ruled for defendants on their cross-petition, and ordered plaintiff to relinquish management and control of the church property and to vacate positions of trust in the church organization.

In essence, the Court of Appeals found, as follows:

That in June 1919 the Serbian Orthodox Church of Akron, Ohio, was incorporated, and the congregation was known as the Serbian Orthodox Church School Congregation of St. Demetrius; that the corporation was a part of the American-Canadian Diocese, and thus a part of the Serbian Orthodox Church Mother Church in Yugoslavia; that the Mother Church is hierarchical and episcopal in structure, as distinguished from autonomous and congregational; that the Mother Church has no power unilaterally to change the geographical limits of the American-Canadian Diocese, although bishops may be deposed and changed by the Mother Church without consulting the diocese; and that because of plaintiff's acts of claiming full ecclesiastical autonomy, found plaintiff to be composed of schismatics who have no right to control church property or to participate in the control of church property or services or to worship as a group of St. Demetrius. Plaintiff association was ordered to relinquish control of all church property and corporate holdings.

Our review is for the purpose of examining the above findings and orders in the light of the *Hull Memorial case,*

*supra,* which was a dispute between the Presbyterian Church in the United States (General Church) and two local Georgia churches, one of which was the Mary Elizabeth Blue Hull Memorial Presbyterian Church. The Presbyterian Church is hierarchical in organization rather than congregational.[1] The membership of the two local churches, believing that the general church had substantially deviated from church doctrine and practice, withdrew from the general church.

According to Georgia law, when the local church joined the general church, control of the local church property passed to the general church and an implied trust arose under which such control would continue as long as the general church did not abandon or depart from the tenets of faith and practice it held at the time the local church became affiliated. The Georgia court asked the jury to determine whether the general church had abandoned or departed from the conditions of the implied trust. Mr. Justice Brennan, in his opinion, pointed out the error in submitting that question to the jury, stating (89 S. Ct., at 606):

"The Georgia courts have violated the command of the First Amendment. The departure-from-doctrine element of the implied trust theory which they applied requires the civil judiciary to determine whether actions of the general church constitute such a 'substantial departure' from the tenets of faith and practice existing at the time of the local churches' affiliation that the trust in favor of the general church must be declared to have terminated. This determination has two parts. The civil court must first decide whether the challenged actions of the general church depart substantially from prior doctrine. In reaching such a decision, the court must of necessity make its own

---

[1] A hierarchical church is generally one in which authority is exercised by laymen and ministers organized in an ascending succession of judicatories, while a congregational church is one in which each local church is self-governing. Note, *Judicial Intervention in Disputes Over the Use of Church Property,* 75 Harv. L. Rev. 1142, 1143, citing Sperry, Religion in America.

interpretation of the meaning of church doctrines. If the court should decide that a substantial departure has occurred, it must then go on to determine whether the issue on which the general church has departed holds a place of such importance in the traditional theology as to require that the trust be terminated. A civil court can make this determination only after assessing the relative significance to the religion of the tenets from which departure was found. Thus, *the departure-from-doctrine element of the Georgia implied trust theory requires the civil court to determine matters at the very core of a religion—the interpretation of particular church doctrines and the importance of those doctrines to the religion. Plainly, the First Amendment forbids civil courts from playing such a role.*" (Emphasis added.)

The opinion (89 S. Ct., at 606) clearly restricts the determination of the right to possession and control of church property to the utilization of neutral law principles, by the following language:

"* * * Civil courts do not inhibit free exercise of religion merely by opening their doors to disputes involving church property. *And there are neutral principles of law, developed for use in all property disputes, which can be applied without 'establishing' churches to which property is awarded.* But First Amendment values are plainly jeopardized when church property litigation is made to turn on the resolution by civil courts of controversies over religious doctrine and practice. If civil courts undertake to resolve such controversies in order to adjudicate the property dispute, the hazards are ever present of inhibiting the free development of religious doctrine and of implicating secular interests in matters of purely ecclesiastical concern. Because of these hazards, the First Amendment enjoins the employment or organs of government for essentially religious purposes, *School District of Township of Abington, Pa.,* v. *Schempp,* 374 U. S. 203, 83 S. Ct. 1560, 10 L. Ed. 2d 844 (1963); the Amendment therefore commands civil courts to decide church property disputes

without resolving underlying controversies over religious doctrine. Hence states, religious organizations, and individuals must structure relationships involving church property so as not to require the civil courts to resolve ecclesiastical questions.'' (Emphasis added.)

Before surveying the Court of Appeals' findings and orders in light of the decision in the *Hull Memorial case*, a further reference to the facts of the instant case is helpful. Insofar as our case is concerned, plaintiff and defendants were able to worship at the church property until this controversy exacerbated. The root cause of the strife in this church (as well as other Serbian Orthodox Churches in the United States) is that there were some members who were disturbed by the relationship between the Mother Church, headquartered at Belgrade, Yugoslavia, and the government of that country. This undercurrent of unrest was precipitated into a polarized controversy when the ruling body of the Mother Church ordered that there were to be three dioceses in the United States and Canada instead of the existing one. Bishop Dionisije was the Bishop of the American-Canadian Diocese and he and his followers (plaintiff) deny the power of the Mother Church to do away with that single diocese. Defendants, to the contrary, adhere to the Belgrade decision. Dionisije was investigated, charged, tried, and found guilty of transgressions against the church and was ordered defrocked by the Holy Episcopal Council, the highest ecclesiastical, judicial body of the Serbian Orthodox Church.

Briefly stated, our inquiry is: Did the Court of Appeals base its judgment, awarding possession and control of the property involved, upon consideration of whether the parties had adhered to or departed from church tenets and doctrine, or did it base its judgment upon principles of neutral law?

The answer lies in the appraisal of the findings of that court. The Court of Appeals' factual findings regarding the name, incorporation, the hierarchical form of organization, and plaintiff's claim of autonomy from the Mother

Church did not require a decision involving church doctrine or tenets.

That court arrived at legal conclusions relative to the organizational relationship, powers and duties of the Mother Church concerning the appointment of a bishop for the Diocese of the United States and Canada, and the Mother Church's attempt to eliminate the diocese. While we recognize that these matters of internal church organization are chronic sources of disagreement for the parties and are frequently mentioned in the pleadings, briefs and arguments, the findings of the Court of Appeals are unnecessary and immaterial to a *neutral* law inquiry utilizing principles of law developed for use in *all* property disputes. Further, the *Hull Memorial case* offers the strong suggestion that civil courts cannot constitutionally determine matters of church government. In that case, the court's opinion cites with approval *Kedroff* v. *St. Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U. S. 94, 97 L. Ed. 120, where, at page 116, the court said:

"* * * The opinion [*Watson* v. *Jones*, 80 U. S. 679, 20 L. Ed. 666] radiates * * * a spirit of freedom for religious organizations, and independence from secular control or manipulation—in short, power to decide for themselves, free from state interference, matters of *church government* as well as those of faith and doctrine. *Freedom to select the clergy, where no improper methods of choice are proven, we think, must now be said to have federal constitutional protection as part of the free exercise of religion against state interference.*" (Emphasis added.)

In addition, the Court of Appeals found that the members of plaintiff association have performed schismatic acts amounting to a withdrawal from the general church. The essence of this finding must lie in a judicial determination that plaintiff has acted contra to the doctrine and tenets of the church. In order to make such a finding the Court of Appeals had to examine plaintiff's activity as well as church doctrine and tenets. The *Hull Memorial case, supra,* held that a jury could not make such an examination, and

160

the viability of the principle of the *Hull Memorial case* commands the same judicial abstinence in the instant case.

After our elimination from consideration of those Court of Appeals' findings regarding church organization on the basis that they are immaterial to a neutral law inquiry, and the elimination of the finding of schism because of the principle of the *Hull Memorial case*, what neutral law principles are available as standards in the evaluation of the merits of this dispute? We look to the ordinary indicia of property rights. The Articles of Incorporation of the Servian [Serbian] Orthodox Church of Akron, Ohio, dated June 21, 1919, show that a corporation not for profit was established under the general corporation laws of Ohio. The Articles reveal that the corporation was formed "for the purpose of providing a place of worship * * * according to the rules, regulations and customs of the Servian [Serbian] Orthodox Church * * * for receiving, holding and disbersing [sic] gifts, bequests and funds from any source; for owning and maintaining suitable real estate and erecting and maintaining * * * buildings, and * * * a cemetery * * *."

Recorded deeds show that the corporation holds legal title to all church property. A review of Ohio law does not reveal recognition of an implied-trust theory of real property when a local church joins a church hierarchy. Even if it were to have existed, civil judicial cognizance of it is deemed unconstitutional if it necessitates a court deciding church doctrine. There are no deeds or other written evidence of conveyance from the local congregation, either to the diocese or the Mother Church. Moreover, the Constitution and By-Laws of the Serbian Orthodox Church School Congregation of Akron provides, in part "The congregation may independently function only in the matters relative to the material holdings (properties) of the congregation." Therefore, in the absence of a conveyance of the property by legal instruments or the existence of an express trust, the title to the property is vested in the corporation.

We note that, in deciding church controversies, civil courts have had occasion to examine decisions made by a church body's tribunal, established to decide disputes. See *Watson* v. *Jones, supra* (80 U. S. 679); Note, *Judicial Intervention in Disputes Over the Use of Church Property,* 75 Harv. L. Rev. 1142, 1162. In the *Watson case,* the court said, at page 729:

"* * * It is of the essence of these religious unions, and of their right to establish tribunals for the decision of questions arising among themselves, that those decisions should be binding in all cases of ecclesiastical cognizance, subject only to such appeals as the organism itself provides for."

Commenting on the *Watson case,* Justice Brennan, in the *Hull Memorial case* (89 S. Ct., 605) said: *"The logic of this language leaves the civil courts no role in determining ecclesiastical questions in the process of resolving property disputes."*

In the case at bar, we are not confronted with the problem of whether we can constitutionally order the enforcement of a determination made by an ecclesiastical tribunal. Other than the order creating the three new dioceses, the record fails to indicate an ecclesiastical tribunal's determination concerning the power of the Mother Church to eliminate the American-Canadian Diocese. The record does not illustrate that plaintiff has been ecclesiastically adjudicated to be outside the church doctrine because of the commission of certain acts. Additionally, the determination of the status of Bishop Dionisije, who was ecclesiastically adjudged defrocked, is frequently mentioned but remains unnecessary to our inquiry. Any question concerning court enforcibility of such a church determination is not before us.

All the agonies of a church controversy are discernible from a review of this case, but we are convinced by the rule of the *Hull Memorial case* that the civil court's role as a tribunal to bring order to church controversies is narrowly limited.

The control of the name and property, of the Serbian

Orthodox Church Congregation of St. Demetrius of Akron, Ohio, must be determined only by reference to the provisions of the Code of Regulations and By-Laws of the corporation not for profit, the corporate laws of this state, and any other secular instruments not requiring the resolution of religious tenets or doctrine.

For the foregoing reasons the judgment of the Court of Appeals is reversed and the cause is remanded to that court for further proceedings in accordance with this opinion.

*Judgment reversed.*

O'NEILL, SCHNEIDER, HERBERT, DUNCAN and CORRIGAN, JJ., concur.

MATTHIAS, J., not participating.