SHARIFF et al., Appellants,

v.

RAHMAN et al., Appellees.

[Cite as *Shariff v. Rahman,* 152 Ohio App.3d 210, 2003-Ohio-1336.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 80745.

Decided March 20, 2003.

212

Saeid B. Amini, for appellants.

McNeal, Schick, Archibald & Biro Co. and Paul W. Ziegler, for appellees.

Thomas P. O'Donnell, for Masjid Bilal, Inc.

---

ANNE L. KILBANE, Presiding Judge.

{¶ 1} This is an appeal from a judgment entered after a bench trial before Judge Kenneth R. Callahan. Appellants, Akbar Shariff, Ahmad Q. Hakim, and Edward Kamal (collectively, the "Dissidents") claim that it was error to dismiss their claims of intentional infliction of emotional distress against Masjid Bilal, a Muslim mosque located in Cleveland, and its imam, Clyde Rahman, in dismissing their claim of "breach of covenant and bylaws" against Rahman, and in ruling in both defendants' favor on a claim of assault and battery. We affirm.

{¶ 2} From the record we glean the following: The Dissidents' complaint generally alleged that Rahman had excluded the three men from participating in congregational prayer and other activities at Masjid Bilal and that the mosque, through its board of trustees, failed to prevent Rahman from abusing his authority. They further alleged that Rahman assaulted them on November 21, 1999, while they marched with picket signs across the street from the mosque. They alleged causes of action against both the mosque and imam for assault and battery, intentional infliction of emotional distress, breach of implied trust, and breach of covenant and bylaws, as well as a claim of negligent hiring and retention against the mosque.

{¶ 3} After the parties had briefed the issues, the judge granted Masjid Bilal's motion to dismiss the claims of negligent hiring, breach of implied trust, and breach of covenant and bylaws on the basis that those claims presented "ecclesiastical" issues of religious governance and that constitutional free exercise doctrines rendered those issues beyond his subject matter jurisdiction. The remaining claims were set for trial.

{¶ 4} On the day of trial, Rahman also moved to dismiss the claims of breach of implied trust and breach of covenant and bylaws against him, and both he and Masjid Bilal moved to dismiss the claims of intentional infliction of emotional distress. Rahman argued that the reasons supporting earlier dismissal of those claims against the mosque also applied to him. While the Dissidents conceded dismissal of the breach-of-implied-trust claim, they argued that the breach-of-covenant-and-bylaws claim should remain against Rahman because the judge had jurisdiction to review Masjid Bilal's bylaws and determine whether Rahman had the authority to exclude them from congregational activities.

{¶ 5} The judge granted Rahman's motion as to both of those claims and also dismissed the claims for intentional infliction of emotional distress because there was no expert testimony to show serious emotional distress. The Dissidents

conceded there was no expert testimony to present on the issue and made no effort to proffer any other evidence showing serious emotional distress prior to the dismissal.

{¶ 6} The bench trial then proceeded solely on the assault and battery claims and Rahman was called as if on cross-examination.[1] He testified that the three men blocked the driveway to the mosque's parking lot as he was driving his car into it and that Shariff struck him with a bottle as soon as he got out of the car. In contrast, the three alleged victims and another witness, Bilal Muhammad, each testified that they were not blocking the driveway because they were picketing on the other side of the street and that Rahman drove his car straight at them in a threatening manner, stopping just inches before the car struck Shariff.

{¶ 7} The three testified that Rahman and two or three other men exited the car and started a fight with the picketers, and that Rahman began the fight by punching Shariff. They admitted that Shariff struck Rahman with a bottle but claimed that he did so in self-defense. The police were called to quell the disturbance, but no arrests were made arising out of the fight. Muhammad, however, was arrested on a different charge, although its nature is unclear: he admitted carrying brass knuckles in his pocket and having a baseball bat in his car, but claimed the arrest was for an unspecified "traffic offense"; Rahman asserted that the arrest was because of a machete or other knifelike weapon found in his car, although none of the weapons was used during the fight.

{¶ 8} The parties did not present any other witnesses or evidence. The judge concluded that Shariff, Hakim, and Kamal had failed to meet their burden of proof on the assault and battery claim and entered judgment in favor of Masjid Bilal and Rahman.

I

{¶ 9} The first assignment of error challenges the dismissal of the intentional infliction of emotional distress actions, which the Dissidents claim were sustainable without expert testimony. Because the judge considered evidence outside the pleadings, this ruling was for summary judgment[2] or for directed verdict on the Dissidents' opening statement.[3] In either case, we conduct a de novo review to determine whether the evidence is sufficient to create a question for the trier of fact.[4] Although the motion to dismiss did not

---

1. R.C. 2317.07.

2. Civ.R. 12(B); Civ.R. 56.

3. Civ.R. 50(A)(1).

4. *Knop v. Toledo* (1995), 107 Ohio App.3d 449, 453–454, 669 N.E.2d 27.

technically satisfy procedural requirements for either summary judgment or for directed verdict—the Dissidents were not given fourteen days to respond[5] and the motion was made before, rather than after, their opening statement—any error was either waived or harmless. The Dissidents did not object to consideration of the motion, admitted that they lacked medical or expert evidence of emotional distress and, as discussed infra, failed to proffer any other evidence that could have established emotional distress. Because they had adequate opportunity to object or respond, any error does not require reversal both because it was waived and because no prejudice has been shown.[6]

 {¶ 10} An action for intentional infliction of emotional distress requires not only outrageous conduct but a resulting emotional injury that is "both severe and debilitating."[7] While the Dissidents assert that it is possible to prove a serious emotional injury without resort to expert evidence,[8] such evidence is necessary in all but the most extraordinary cases.[9] They admitted that they lacked expert evidence to show the existence and cause of their emotional injuries, they made no effort to proffer evidence showing that they could prove their claims without expert testimony, and the record gives no indication that this case was so extraordinary that expert evidence was unnecessary. Therefore, the grant of judgment on these claims against the Dissidents was not error.

## II

 {¶ 11} The second assignment of error contends that the dismissal of breach-of-covenant-and-bylaws claim against Rahman was not barred by constitutional principles guaranteeing free exercise of religion. The First Amendment prohibits courts from exercising subject matter jurisdiction over "ecclesiastical questions,"[10] and matters involving religious governance are cognizable in only limited circumstances.

---

5. Civ.R. 56(C).

6. See *Siegler v. Batdorff* (1979), 63 Ohio App.2d 76, 82, 17 O.O.3d 260, 408 N.E.2d 1383 (summary judgment); *Vistein v. Keeney* (1990), 71 Ohio App.3d 92, 102, 593 N.E.2d 52 (directed verdict).

7. *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, paragraph three of the syllabus; *Dickerson v. Internatl. United Auto Workers Union* (1994), 98 Ohio App.3d 171, 183, 648 N.E.2d 40.

8. *Paugh*, 6 Ohio St.3d at 80, 6 OBR 114, 451 N.E.2d 759.

9. *Dickerson*, 98 Ohio App.3d at 186, 648 N.E.2d 40.

10. *Presbyterian Church in the United States v. Hull Mem. Presbyterian Church* (1969), 393 U.S. 440, 449, 89 S.Ct. 601, 21 L.Ed.2d 658.

{¶ 12} The Dissidents claim that the difference between hierarchical and congregational organizations justifies the requested review. In a hierarchical system, the congregation is subordinate to a general organization, typically consisting of tribunals or clerics, which controls spiritual policy and makes decisions for the entire membership.[11] In a congregational system, however, no person or tribunal is superior to the congregation itself, which retains ultimate authority to govern its affairs.[12] Because Masjid Bilal is a congregational organization, the Dissidents claim that the judge retained jurisdiction to determine whether decisions were made by the "proper church authority."[13]

{¶ 13} Masjid Bilal, Inc. is a not-for-profit corporation organized under Ohio law, and as such is governed by corporate bylaws. The complaint alleges that these bylaws prohibit Rahman from excluding the Dissidents as members and, therefore, they argue that the judge had jurisdiction to determine whether they were excluded by the proper authority. A judge cannot review the bylaws, however, if the inquiry will lead to an examination of whether the mosque's board of trustees "met the standards of the congregation and would therefore involve an inquiry into ecclesiastical concerns."[14]

{¶ 14} The complaint alleges that the bylaws allow all local members of the Muslim American Society ("M.A.S.") to vote for the Masjid Bilal's board of trustees and imam and that, as members of the M.A.S., the Dissidents were improperly excluded from the mosque by Rahman. Inquiry into this issue would require the determination of ecclesiastical questions such as whether the imam or the board of trustees is meeting the "standards of the congregation"[15] in excluding the three men from Masjid Bilal. Although the complaint alleges that the Dissidents attempted to resolve the matter, it does not allege that they brought their grievances to the congregation.

{¶ 15} Whatever the differences between hierarchical and congregational organizations, the ultimate arbiter of the bylaws is the highest authority within the organization, and our role is only to identify that authority, not to review its decisions.[16] The complaint indicates that if the congregation disapproved of the conduct of its board of trustees or its imam, it could take steps to remove them

---

11. *State ex rel. Morrow v. Hill* (1977), 51 Ohio St.2d 74, 76, 5 O.O.3d 45, 364 N.E.2d 1156.

12. Id.

13. *Tibbs v. Kendrick* (1994), 93 Ohio App.3d 35, 42, 637 N.E.2d 397.

14. Id. at 43, 637 N.E.2d 397.

15. Id.

16. *First Baptist Church of Glen Este v. Ohio* (S.D.Ohio 1983), 591 F.Supp. 676, 682–683.

from their positions. Nothing in the complaint suggests that the three took their grievances to the congregation or that Rahman or the board acted in contravention of the congregation's express wishes. Therefore, the judge correctly ruled that he lacked subject matter jurisdiction over this claim.

### III

{¶ 16} In the third assignment of error, Dissidents argue that the judge's verdict on the assault and battery claims was against the manifest weight of the evidence. We will not reverse a judgment on manifest-weight grounds if it is "supported by some competent, credible evidence * * *."[17] Although we review the record broadly to determine whether the judgment was adequately supported, we must still grant considerable deference to the judge, who observed the witnesses' demeanor and assessed their credibility.[18]

{¶ 17} The Dissidents essentially contend that because all three of them testified that Rahman drove his car in a threatening manner and threw the first punch, while only he testified to a different set of facts, the judgment was against the manifest weight of the evidence. They further claim that the testimony of Bilal Muhammad should be given more weight because he was not a party to the action and was therefore more objective. Muhammad, however, admittedly was among the picketers at the scene, was allied with the Dissidents, and had brass knuckles in his pocket as well as some other weapon in his car, whether a baseball bat or a machete.

{¶ 18} While none of the weapons was used in the incident, the judge could reasonably discount Muhammad's testimony as lacking credibility because of his association with the three and his possession of weapons. Without more, the fact that Rahman was outnumbered at trial does not lead us to believe that the judge erred in finding the facts inconclusive, and the judgment is not against the manifest weight of the evidence. The assignments of error are overruled.

Judgment affirmed.

DIANE KARPINSKI and NAHRA, JJ., concur.

JOSEPH J. NAHRA, J., retired, of the Eighth Appellate District, sitting by assignment.

---

17. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

18. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 278–279, 741 N.E.2d 155.