[Cite as *Ciganik v. York*, 2013-Ohio-5834.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| EARLEENE CIGANIK, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | CASE NO. 2013-P-0018 |
| ROBERT YORK, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2011 CV 01458.

Judgment: Reversed and remanded.

*Joel A. Holt* and *James E.J. Ickes,* Williams, Welser, Kratcoski & Can, L.L.C., 11 South River Street, Suite A, Kent, OH 44240 (For Plaintiff-Appellant).

*Martha L. Allee* and *Carolyn M. Cappel*, Weston Hurd LLP, The Tower at Erieview, 1301 E. 9th Street, Suite 1900, Cleveland, OH 44114 (For Defendant-Appellee).

COLLEEN MARY O'TOOLE, J.

{¶1} Appellant, Earleene Ciganik ("Mrs. Ciganik"), appeals from the February 4, 2013 judgment of the Portage County Court of Common Pleas, granting appellee, Robert York's ("Pastor York"), motion for summary judgment.

{¶2} Mrs. Ciganik, a woman in her eighties, was a 50-year member of First Baptist Church of Streetsboro. In 2010, Pastor York was hired as the new church pastor. Mrs. Ciganik began to disagree with the direction of the church. She

communicated her disagreement over various matters, including church doctrine, governance, and finances, with other church members, administrative staff, and Pastor York.

**{¶3}** As a result, on April 10, 2011, Pastor York gave Mrs. Ciganik a letter maintaining that she had committed offenses against him and the church, including a statement that she had attempted to steal church property, specifically a picture of the former pastor. Mrs. Ciganik was informed that a disciplinary meeting would be held the following week, in accordance with church policy. According to Mrs. Ciganik, Pastor York advised her that her membership would be taken away and that she would not be permitted back in the church.

**{¶4}** Nevertheless, on April 17, 2011, Mrs. Ciganik went to First Baptist Church for Sunday worship. However, at the direction of Pastor York, police removed Mrs. Ciganik from church property. Pastor York later read the April 10, 2011 letter to the congregation, which contained the charges against Mrs. Ciganik, including the fact that she had attempted to steal church property. Two days later, Pastor York sent Mrs. Ciganik a letter, indicating that a vote was conducted and that her church membership was revoked.

**{¶5}** On November 8, 2011, Mrs. Ciganik filed a complaint against Pastor York alleging defamation per se and intentional infliction of emotional distress. Pastor York filed an answer the next month.

**{¶6}** Pastor York later indicated in his deposition that Mrs. Ciganik's claims against him stem from her church membership and that his alleged unkind acts relate to ecclesiastical matters, outside of the court's jurisdiction. On August 21, 2012, Pastor

2

York filed a motion to dismiss for lack of subject matter jurisdiction, or in the alternative, for summary judgment.

{¶7}   Thereafter, Mrs. Ciganik filed a brief in opposition on November 14, 2012. Mrs. Ciganik maintained that the trial court has jurisdiction to hear her claims, and because there are genuine issues of material fact remaining for a jury to decide, she requested that Pastor York's motion be denied in its entirety.

{¶8}   In her affidavit attached to her brief in opposition, Mrs. Ciganik averred she was intimidated and harassed by Pastor York and by other church members at his direction.  As a result of the harassment, Mrs. Ciganik stated: "I can't sleep, am nervous and anxious, have been sick to my stomach and feel isolated.  I have felt depressed and sad."  She denied stealing the picture of the former pastor from a church wall. Rather, Mrs. Ciganik indicated she only wished to move the picture from its new "hidden" spot, back to its original, more visible location.

{¶9}   Also attached to Mrs. Ciganik's brief in opposition was an affidavit from her daughter, Linda Smith ("Smith").  Smith averred that she witnessed her mother being intimidated and harassed by Pastor York and other church members.  Since then, Smith stated her mother has become withdrawn, isolated, sad, anxious, and nervous. On one occasion, Smith saw a church member accuse her mother of trying to steal the picture of the former pastor.  Smith said she and her mother told various members to stop the harassment.

{¶10}  On December 6, 2012, Pastor York filed a reply brief in support of his motion to dismiss for lack of subject matter jurisdiction or, in the alternative, for summary judgment.  Later that month, Mrs. Ciganik filed a sur-reply brief in opposition.

3

{¶11} On February 4, 2013, the trial court granted Pastor York's motion for summary judgment. The court held that it has no jurisdiction to determine the claims of defamation per se and intentional infliction of emotional distress because the actions qualify as ecclesiastical matters. Mrs. Ciganik filed an appeal and raises the following assignments of error:

{¶12} "[1.] The Trial Court erred as a matter of law when it determined that it lacked jurisdiction to hear and determine Mrs. Ciganik's purely secular defamation per se and IIED claims in contravention of existing Ohio precedent.

{¶13} "[2.] The Trial Court erred as a matter of law when it improperly found that York possessed a qualified privilege despite finding a lack of jurisdiction and when the record is replete with issues of fact concerning whether York was entitled to the defense of qualified privilege and whether York acted with actual malice.

{¶14} "[3.] The Trial Court, by abdicating its jurisdiction, violated Mrs. Ciganik's right to a meaningful remedy under Ohio's Constitution and her right to due process of law [under] the Fourteenth Amendment."

{¶15} We are called upon to determine whether the nature of Mrs. Ciganik's claims for defamation per se and intentional infliction of emotional distress is ecclesiastical or secular. Upon review, we find her first assignment of error dispositive of this appeal.

{¶16} This case involves the granting of a motion for summary judgment. This court recently stated in *Meloy v. Circle K Store*, 11th Dist. Portage No. 2012-P-0158, 2013-Ohio-2837, ¶5-6:

{¶17} "Summary judgment is a procedural tool that terminates litigation and thus should be entered with circumspection. *Davis v. Loopco Industries, Inc.*, 66 Ohio St.3d 64, 66 * * * (1993). Summary judgment is proper where (1) there is no genuine issue of material fact remaining to be litigated; (2) the movant is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and, viewing the evidence in the non-moving party's favor, that conclusion favors the movant. *See, e.g.*, Civ.R. 56(C).

{¶18} "When considering a motion for summary judgment, the trial court may not weigh the evidence or select among reasonable inferences. *Dupler v. Mansfield Journal Co.,* 64 Ohio St.2d 116, 121 * * * (1980). Rather, all doubts and questions must be resolved in the non-moving party's favor. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 359 * * * (1992). Hence, a trial court is required to overrule a motion for summary judgment where conflicting evidence exists and alternative reasonable inferences can be drawn. *Pierson v. Norfork Southern Corp.*, 11th Dist. Ashtabula No. 2002-A-0061, 2003-Ohio-6682, ¶36. In short, the central issue on summary judgment is, 'whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 * * * (1986). On appeal, we review a trial court's entry of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 * * * (1996)." (Parallel citations omitted.)

{¶19} "'It is well-settled that American courts will steadfastly decline to interfere in church disputes over doctrinal or spiritual matters.'" *Hudson Presbyterian Church v. Eastminster Presbytery*, 9th Dist. Summit No. 24279, 2009-Ohio-446, ¶10, quoting

5

*Winston v. Second Baptist Missionary Church of Lorain*, 9th Dist. Lorain No. 96CA006588, 1997 Ohio App. LEXIS 4129, *5 (Sept. 10, 1997). "A court may decide a church dispute, however, if it does not require that the court 'delve into areas of church dogma' or interpret doctrinal beliefs." *Id.* "A court may exercise its jurisdiction over a church dispute if it is able to resolve the dispute by employing neutral principles of law." *See Id.*; *Jones v. Wolf*, 443 U.S. 595, 602-04 (1979); *State ex rel. Morrow v. Hill*, 51 Ohio St.2d 74, 80 (1977); *Serbian Orthodox Church of Congregation of St. Demetrius of Akron v. Kelemen*, 21 Ohio St.2d 154, 158 (1970). "The fact that a trial court's decision will have implications for a religious entity is not a per se indication that the trial court lacks jurisdiction over the matter." *Hudson Presbyterian* at ¶11, citing *Winston* at *2.

**{¶20}** "Generally, civil courts lack jurisdiction to hear ecclesiastical disputes within a church, although courts may hear church disputes that are secular in nature." *Slavic Full Gospel Church, Inc. v. Vernyuk*, 8th Dist. Cuyahoga No. 97158, 2012-Ohio-3943, ¶16, citing *Watson v. Jones,* 80 U.S. 679 (1872); *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696 (1976).

**{¶21}** In determining whether courts have jurisdiction over church disputes, courts must first look at whether the church is hierarchical or congregational. *Slavic Full Gospel, supra,* at ¶17. Civil courts generally lack jurisdiction to hear church disputes if the church is hierarchical. *Id.,* citing *Tibbs v. Kendrick*, 93 Ohio App.3d 35, 42 (8th Dist.1994). However, civil courts have jurisdiction over certain matters if the church is congregational. *Id.* Thus, if the church is congregational, courts must next determine whether the nature of the dispute is ecclesiastical or secular. *Slavic Full Gospel* at ¶18, citing *Tibbs* at 43.

6

{¶22} In this case, First Baptist Church of Streetsboro is an Ohio non-profit corporation. Therefore, the church is congregational, thereby invoking the jurisdiction of the trial court over certain matters. *See Slavic Full Gospel* at ¶17, citing *Tibbs* at 42.

{¶23} Next, we must review Mrs. Ciganik's complaint to determine whether her claims require determination of ecclesiastical or secular issues. *See Slavic Full Gospel* at ¶18, citing *Tibbs* at 43.

{¶24} Courts properly decline jurisdiction on "purely ecclesiastical" grounds such as appointing or removing pastors and inquiring into church finances. *See, e.g., Robinson v. Freedom Faith Missionary Baptist Church*, 2d Dist. Montgomery No. 20232, 2004-Ohio-2607; *McDaniel v. Phelps*, 1st Dist. Hamilton No. C-010744, 2003-Ohio-41; *Tibbs, supra.* "[T]he First Amendment has been generally interpreted to mean that courts are barred from inquiring into purely ecclesiastical questions and from resolving disputes over church doctrines and practices." *Potts v. Catholic Diocese,* 159 Ohio App.3d 315, 2004-Ohio-6816, ¶21 (7th Dist.), citing *Presbyterian Church v. Mary Elizabeth Blue Hull Memorial Presbyterian Church*, 393 U.S. 440, 447 (1969).

{¶25} On the other hand, courts retain jurisdiction on "purely secular" matters, i.e., non-doctrinal disputes which can be resolved by employing neutral principles of law. *Hudson Presbyterian, supra,* at ¶10. Defamation per se is a legal issue that is purely secular in nature and can be resolved by applying neutral principles of law. *See McWreath v. Cortland Bank*, 11th Dist. Trumbull No. 2010-T-0023, 2012-Ohio-3013, ¶42-43 (holding that defamation per se occurs when a statement is defamatory on its face, consisting of words which import an indictable criminal offense involving moral turpitude or infamous punishment, impute some loathsome or contagious disease which

excludes one from society or tend to injure one in his trade or occupation.)   Thus, defamation per se is a clearly delineated set of statements that secular courts have determined are intrinsically defamatory.

{¶26}   Upon review, we find Mrs. Ciganik's two claims, defamation per se (based upon an indictable criminal offense involving moral turpitude) and intentional infliction of emotional distress (based upon the defamation), are secular.   Therefore, basic tort principles apply.   *See, e.g., Bennett v. Evangelical Lutheran Church in America, Southern Ohio Synod*, 97 Ohio App.3d 786, 791 (10th Dist.1994).   Simply because one of the parties includes a religious figure does not necessarily make the matter ecclesiastical.   *Id., citing Fairborn Church of God and Salzgaber v. First Christian Church*, 65 Ohio App.3d 368 (4th Dist.1989).

{¶27}   The record in this case establishes that Mrs. Ciganik's claims are governed by clearly defined principles of secular law and do not require an interpretation or decision involving church doctrinal matters.   Accordingly, Mrs. Ciganik's claims are not "purely ecclesiastical" and are within the jurisdiction of the trial court. Therefore, since the issues here are secular, the trial court erred in granting Pastor York's motion for summary judgment after determining that it lacked subject matter jurisdiction to hear this case.

{¶28}   Mrs. Ciganik's first assignment of error has merit.

{¶29}   Given the disposition of her first assignment of error, we find the remaining assignments of error moot.   App.R. 12(A)(1)(c).

{¶30} The judgment of the Portage County Court of Common Pleas is reversed and the matter is remanded for further proceedings consistent with this opinion. It is ordered that appellee is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.

DIANE V. GRENDELL, J.,

CYNTHIA WESTCOTT RICE, J.,

concur.